UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | CRIMINAL NO.  08-050 (RMU) |
| | : | |
| **TREVELL TREMAINE HICKS,** | : | |
| | : | Status: June 12, 2008 |
| Defendant. | : | |
| | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
### TO SUPPRESS EVIDENCE AND STATEMENTS

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendant's Motion to Suppress Tangible Evidence. In support of its opposition, the Government relies on the following points and authorities and such points and authorities as may be cited at a hearing on the motion.

### FACTUAL BACKGROUND

On February 8, 2008, officers with the Metropolitan Police Department (MPD) were conducting narcotic observations in the parking lot of an apartment complex in the 1700 block of Benning Road, N.E.  At approximately 12:30 a.m., an under cover officer (UC) observed the defendant and an unknown buyer walk onto the lot from Benning Road.  The two men stopped in front of a burgundy Dodge Stratus that was parked on the lot and had a conversation.  The buyer handed the defendant some money and the defendant walked over to the driver's side of the Stratus. The defendant opened the driver's  door of the Stratus.  The UC saw the defendant bend over and reach into the driver's side of the car.   After a few seconds, the defendant came back out of the Stratus with an object in his hand, shut the door, and walked around the rear of the Stratus toward the buyer.  The defendant approached the buyer and the buyer handed a cigarette to the defendant.

The UC watched the defendant unscrew the top from a vial that he was holding in his hand and dip the cigarette into the vial. The defendant handed the cigarette to the buyer and screwed the cap back onto the vial. The defendant walked back to the Stratus, opened the driver's-side door and leaned inside. After a few seconds, the defendant closed the door and walked toward an apartment building next to the parking lot. At the same time, the buyer was walking out of the parking lot toward 17th Street. The UC radioed the arrest team that was waiting nearby. In the broadcast, the UC provided the arrest team with a description of the defendant and informed them that the defendant was entering an apartment building. The UC officer directed the arrest team to the apartment building and as they approached the building they could see the defendant standing in the lobby with several women. The defendant stepped out of the door to the building and was immediately stopped. The defendant was identified by the UC as the person engaged in drug transactions and placed under arrest.

The officers searched the defendant and recovered $576 from his right front pants pocket. They did not recover keys to the Stratus. However, Officer Chaplin went to the Stratus and when he shined his flashlight into the Stratus he saw a bottle of PCP in the map pocket on the driver's side door. Officer Bauserman used a "slim Jim" to unlock the door to the Stratus. The officers entered the Stratus and recovered two full half-ounce bottles of PCP and another one-ounce bottle that was approximately 1/4 full of PCP from the map pocket on the driver's door. In addition, they recovered a loaded (9 rounds) Glock 21 .45-cal semiautomatic pistol under the driver's seat. The Stratus was not registered to the defendant, but personal papers in the name of the defendant were recovered from the glove compartment.

**ARGUMENT**

In his motion, the defendant contends that the tangible evidence recovered from his person and the car should be suppressed because the defendant was arrested without a warrant or probable cause and the car from which the PCP and pistol were recovered, was searched without a warrant. The defense motion should be denied because the police had articulable suspicion to initially stop the defendant and had probable cause to arrest the defendant once he was identified by the undercover officer. This Court should deny the motion suppress the items seized from the car because the officer had probable cause to search the car based on the observations of the officer and seeing suspected PCP in plain view.

**I.    The Officers Had Reasonable, Articulable Suspicion to Stop the Defendant, and Probable Cause to Arrest Him.**

Terry v. Ohio, 392 U.S. 1 (1968) permits police officers to temporarily "seize" a person under certain circumstances, namely in brief encounters between a citizen and the police on public streets, which require swift action because of observations the officer has made. Id. at 20. The officer may briefly "seize," or detain the citizen if he has a reasonable, articulable suspicion that "criminal activity may be afoot." Id. at 30. The officer need not be certain that the citizen is engaged in criminal activity; reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). Thus, a Terry stop may be conducted simply "on the need to 'check out' a reasonable suspicion." United States v. Clark, 24 F.3d 299, 303 (D.C. Cir. 1994).

Because such a stop may occur on a reasonable suspicion, whether such suspicion existed in a particular situation is determined by the totality of the circumstances. Courts may not scrutinize

each possible factor upon which the officer relied on in a separate and distinct manner. <u>United States v. Sokolow</u>, 490 U.S. 1, 8-9 (1989). "An officer on the beat does not encounter discrete, hermetically sealed facts," and for that reason while "a single factor might not itself be sufficiently probative of wrongdoing to give rise to a reasonable suspicion, the combination of several factors – especially when viewed through the eyes of an experienced officer – may." <u>United States v. Edmonds</u>, 240 F.3d 55, 59-60 (D.C. Cir. 2001).

In the instant situation, the arrest team had reasonable articulable suspicion to conduct a <u>Terry</u> stop of the defendant because he fit the description provided by the UC as the individual who the officer had just seen engage in a drug transaction. The UC specifically witnessed the defendant go to the Dodge Stratus, retrieve a vial of liquid, remove the cap from the liquid, dip a cigarette into the liquid, and then hand that cigarette to another individual in exchange for money. The officers had the authority to briefly detain the defendant until his identity could be confirmed by the UC. Furthermore, the UC directed the arrest team to the defendant, who was standing inside of the apartment building. The UC and the arrest team could see the defendant through a window. Although the officers had probable cause to arrest the defendant at this point, they did not. The merely detained him until an identification was made.

"Probable cause to arrest requires the existence of facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person in believing that the suspect has committed, is committing, or is about to commit an offense." <u>United States v. Wesley</u>, 293 F.3d 541, 545 (D.C. Cir. 2002) (quotations and citations omitted) . The probable cause standard merely requires the showing of a "fair probability" that a crime has been or is being committed. See <u>Illinois v. Gates</u>, 462 U.S. 213, 246 (1983) ("probable cause does not demand the certainty we associate with

formal trials[;] [i]t is enough that there was a fair probability").  If the police have probable cause for an arrest, they may make a full search of the arrestee and the area within the arrestee's immediate control at the time of the arrest.  Chimel v. California, 395 U.S. 752, 763 (1969).

Aft the arrest team detained the defendant, the y held him briefly until the UC confirmed his identification as the person he had witnesses selling PCP.  Once the UC observed the individual the arrest team had detained, and confirmed that it was in fact the individual from whom he had just purchased illegal narcotics, the arrest team had probable cause to arrest the defendant, and search his person.  On his person, the officers found the $576.

**II.     The officer had probable cause to search the Dodge Stratus because the UC observed the defendant place a vial of PCP back in the car and the officer saw vials of PCP in plain view in the car before the search.**

The search of the Dodge Stratus and the subsequent seizure of PCP, pistol, and documentation in the defendant's name were consistent with the Fourth Amendment. In *Coolidge v. New Hampshire*, 403 U.S. 443, 468 (1971), a plurality of the Supreme Court held that the "plain view" doctrine permits the warrantless seizure of private possessions where three requirements are satisfied. First, the police officer must lawfully make an "initial intrusion" or otherwise properly be in a position from which he can view a particular area. *Id.* at 465-68. Second, the officer must discover incriminating evidence "inadvertently," that is, the officer may not "know in advance the location of [certain] evidence and intend to seize it." *Id.* at 470. Third, it must be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure. *Id.* at 466.

Applying these rules, the Supreme Court held in a plurality opinion in *Texas v. Brown*, 460 U.S. 739 (1983), that an officer who stopped a driver at a license checkpoint properly seized a party

balloon that dropped from the driver's hand. In that case, a police officer stopped Clifford Brown at a checkpoint and asked him for his license. At approximately the same time, the officer shined his flashlight into the car and saw an opaque party balloon, knotted about a half-inch from the tip, drop from Brown's hand. *Id.* at 733. The officer then positioned himself so that he could see into the glove compartment when Brown opened it. Inside the compartment were several small plastic vials, some loose white powder, and an open bag of party balloons. Brown told the officer that he had no license in his possession. The officer then asked Brown to exit the car, reached into the vehicle, and picked up the balloon that had fallen from Brown's hand, which turned out to contain heroin. The officer testified at trial that he knew from previous experience that narcotics frequently were packaged in such balloons. *Id.* at 734.

The Supreme Court concluded that the warrantless seizure of the balloon was proper. First, the Court ruled, the officer lawfully looked into Brown's car:

> The general public could peer into the interior of Brown's automobile from any number of angles; there is no reason [the police officer] should be precluded from observing as an officer what would be entirely visible to him as a private citizen. There is no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers. In short, the conduct that enabled [the officer] to observe the interior of Brown's car and of his open glove compartment was not a search within the meaning of the Fourth Amendment.

*Id.* at 740. Second, the Court held that *Coolidge*'s requirement that it be "immediately apparent" that the items viewed were evidence of a crime, contraband, or otherwise subject to seizure was met because the officer "possessed probable cause to believe that the balloon in Brown's hand contained an illicit substance." *Id.* at 742. The officer, the Court said, had testified that he was aware, both from his participation in previous narcotics arrests and from discussion with other officers, that balloons

tied in the manner of the one possessed by Brown frequently were used to carry narcotics. *Id.* at 742-43. Finally, the Court ruled that the "inadvertence" element of the plain view doctrine was satisfied because "although the officers no doubt had an expectation" that some of the cars they stopped would contain illegal drugs, there was "no suggestion that the roadblock was a pretext whereby evidence of narcotics violation might be uncovered in 'plain view' in the course of a check for driver's licenses." *Id.* at 743-44.

*Brown* governs this case. The officers did nothing more than look into the windows of the Dodge Stratus, something that any passerby could have done. The UC and the officers that peered into the car are familiar with the appearance and packaging of PCP as a result of his extensive training and experience. The plain view doctrine thus justified the warrantless seizure of the narcotics from the passenger compartment of the Ford Taurus. *See, e.g.*, *United States v. Castellanos*, 731 F.3d 979, 984 (D.C. Cir. 1984) (concluding that seizure of bag containing a white powdery substance in suspect's pocket that became visible when suspect stepped from car was proper under plain view doctrine); *United States v. Gibson*, 636 F.2d 761, 763-64 (D.C. Cir. 1980) (upholding search of purse into which officers had witnessed suspect placing packets containing a white substance). Accordingly, the PCP in this case should not be suppressed.

Once the officers saw the crack cocaine, they had probable cause to believe that the Dodge Stratus contained contraband, and therefore could search it without a warrant. Because motor vehicles are both mobile and highly regulated, where there is probable cause to believe a vehicle contains contraband or evidence, police officers need not obtain a warrant to search it. *E.g.*, *New York v. Class*, 475 U.S. 113, 112-14 (highly regulated); *Carroll v. United States*, 267 U.S. 132, 160-62 (1925) (mobile). The scope of a warrantless search of an automobile extends to "every part of the

7

vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982). In this case, the object of the search was narcotics, which could have been concealed in any number of places within the car, including the center console, the glove compartment, and the trunk. Upon vials of PCP in the passenger compartment, the officers were entitled to search these areas. *E.g.*, *United States v. (Monte F.) Brown*, 374 F.3d 1326, 1329 (D.C. Cir. 2004) (concluding that presence of tools of crime on passenger seat gave "rise to a likelihood . . . that the driver . . . placed the fruits of his crime in the trunk"); *United States v. Rocky Lee) Brown*, 334 F.3d 1161, 1170 (D.C. Cir. 2003) (ruling that gun in passenger compartment "strongly supports" probable cause for search of trunk for guns, ammunition, and narcotics); *United States v. Turner*, 119 F.3d 18, 20 (D.C. Cir. 1997) (holding that finding even a personal-use amount of drugs in passenger compartment gave rise to probable cause to search trunk for more narcotics). Therefore, none of the evidence found in the Dodge Stratus should be suppressed.

**CONCLUSION**

WHEREFORE, for the reasons stated above, the United States respectfully requests that this Honorable Court deny Defendant's Motion Suppress Evidence and Statements.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
Bar No. 498610


By: _____/s/_____
CHARLES NEIL FLOYD
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W., Rm. 4243
Washington, D.C. 20530
(202) 305-2195